# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

STATE OF WASHINGTON, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, et al.,

Defendants-Appellants.

On Appeal from the U.S. District Court for the District of Rhode Island
No. 1:25-cv-00626-MSM-AEM
The Honorable Mary S. McElroy

## PLAINTIFF STATES' OPPOSITION TO DEFENDANTS'
## EMERGENCY MOTION FOR STAY PENDING APPEAL

NICHOLAS W. BROWN
Attorney General of Washington

ANDREW R.W. HUGHES
ZANE MULLER
ALIANA KNOEPFLER
ANDREA ALEGRETT
Assistant Attorneys General
CRISTINA SEPE
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
*Attorneys for State of Washington*

LETITIA JAMES
Attorney General of New York

BARBARA D. UNDERWOOD
Solicitor General
JUDITH N. VALE
Deputy Solicitor General
28 Liberty Street
New York, NY 10005
212-416-6274
*Attorneys for State of New York*

PETER F. NERONHA
Attorney General of Rhode Island

KATHRYN M. SABATINI
Chief, Civil Division
Special Assistant Attorney General
JORDAN G. MICKMAN
Unit Chief, Civil and Community Rights
Assistant Attorney General
LEONARD GIARRANO IV
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
*Attorneys for State of Rhode Island*

(Additional Counsel on Signature Page)

**TABLE OF CONTENTS**

I. INTRODUCTION ..............................................................................................1

II. STATEMENT ...................................................................................................3

    A. The Continuum of Care Program .......................................................3

    B. Defendants' Issuance of Unlawful
       FY 2025 CoC Funding Conditions.....................................................4

    C. Proceedings in the District Court ........................................................6

    D. Congress Passes an Appropriations Bill
       Requiring Grant Renewals and Defendants
       Move to Dissolve the Preliminary Injunction.....................................8

III. LEGAL STANDARD.........................................................................................9

IV. ARGUMENT....................................................................................................11

    A. Defendants Are Not Likely to
       Succeed on the Merits.......................................................................11

       1. Defendants failed to timely appeal
          the preliminary injunction order.............................................11

       2. Defendants are not likely to succeed
          on the merits of their appeal of the district
          court's denial of their motion to dissolve ..............................13

    B. Defendants Will Not Be Irreparably
       Injured Absent a Stay.......................................................................16

    C. The Issuance of a Stay Would
       Irreparably Harm Plaintiff States .....................................................17

D.    The Public Interest Favors Denying Defendants' Motion to Stay ...............................................................23

V.    CONCLUSION ...................................................................................23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bos. Parent Coal. for Acad. Excellence*
  *Corp. v. Sch. Comm. of City of Boston*,
  996 F.3d 37 (1st Cir. 2021)....................................................................10

*Charlesbank Equity Fund II v. Blinds to Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004).................................................................22

*City of Seattle v. Trump*,
  No. 2:25-cv-01435-BJR,
  2025 WL 3041905,
  (W.D. Wash. Oct. 31, 2025) ..................................................................22

*Concilio de Salud Integral de*
  *Loiza, Inc. v. Perez-Perdomo*,
  551 F.3d 10 (1st Cir. 2008).............................................................10, 13

*Doe 2 v. Shanahan*,
  755 F. App'x 19 (D.C. Cir. 2019)..........................................................12

*Doe v. Trump*,
  157 F.4th 36 (1st Cir. 2025)...................................................................17

*Franklin Twp. Sewerage Auth. v. Middlesex Cnty. Utilities Auth.*,
  787 F.2d 117 (3d Cir. 1986) ...........................................................10, 11

*Hoult v. Hoult*,
  373 F.3d 47 (1st Cir. 2004).............................................................12, 14

*Martin Luther King, Jr. County v. Turner*,
  798 F. Supp. 3d 1224 (W.D. Wash. 2025) ............................................21

*Matos ex rel. Matos v. Clinton Sch. Dist.*,
  367 F.3d 68 (1st Cir. 2004)....................................................................21

*New York v. U.S. Dep't of Just.*,
  804 F. Supp. 3d 294 (D.R.I. 2025).................................................19, 20

*Nken v. Holder,*
  556 U.S. 418 (2009) ..............................................................10, 16

*TEC Eng'g Corp. v. Budget Molders Supply, Inc.*,
  82 F.3d 542 (1st Cir. 1996)...................................................15

*Teledyne Techs., Inc. v. Shekar*,
  831 F.3d 936 (7th Cir. 2016) ................................................12

*Whalen v. Roe*,
  423 U.S. 1313 (1975) ............................................................13

*Woonasquatucket River Watershed*
  *Council v. U.S. Dep't of Agric.*,
  778 F. Supp. 3d 440 (D.R.I. 2025)........................................23

## Statutes

28 U.S.C. § 1651..........................................................................12

42 U.S.C. § 11301(a)(1)............................................................... 3

42 U.S.C. § 11386b(d)(2)..............................................................14

42 U.S.C. § 11386a...................................................................... 3

42 U.S.C. § 11386c(b) ................................................................. 3

42 U.S.C. § 11386b(d) ................................................................. 3

42 U.S.C. § 11382(b) ................................................................4, 14

Full Year Continuing Appropriations and Extensions Act, 2025
  Pub. L. No. 119-4, 139 Stat. 9 (2025)................................... 4

Transportation, Housing and Urban Development Consolidated
  Appropriations Act of 2026,
  Pub. L. No. 119-75, 140 Stat. 173.......................................2, 8

<u>Regulations</u>

24 C.F.R § 578.37(a)(1) ................................................................................. 3

<u>Rules</u>

Fed. R. App. P. 26(a)(1) ................................................................................11

Fed. R. App. P. 4(a)(1)(B) ............................................................................11

<u>Other Authorities</u>

16 Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure § 3924.2 (3d ed. 2025) ....................................12

Grants.gov, Related Documents,
*2021 Continuum of Care* (2021),
https://grants.gov/search-results-detail/335322 ...................................................... 4

HUD, *Office of Community Planning and
Development Homeless Assistance Grants*,
https://archives.hud.gov/budget/fy25/2025_CJ_Program_-_HAG.pdf ............... 4

# I. INTRODUCTION

Defendants-Appellants ask this Court to stay a preliminary injunction they chose not to appeal. But they may not leverage an appeal of their motion to dissolve the preliminary injunction to reopen the merits of that injunction and resurrect the chaos it was designed to prevent. The district court correctly concluded Defendants were not likely to succeed on their appeal from the denial of their motion to dissolve the preliminary injunction and that a stay would irreparably harm Plaintiffs and the public. This Court should deny Defendants' motion to stay.

For decades, the Department of Housing and Urban Development has shepherded the Continuum of Care (CoC) program with the continuity and predictability mandated by statute. But starting in November, Defendants sought to upend those program requirements by unlawfully rescinding the program's notice of funding opportunity (NOFO), long after the statutory deadline for doing so had passed, and replacing it with a new NOFO laden with unlawful conditions. These new conditions threatened to defund thousands of existing projects, required funding recipients to fundamentally reshape their programs on an impossible timeline, and essentially guaranteed that tens of thousands of formerly homeless individuals and families would be evicted back into homelessness. HUD then sought to avoid the district court's jurisdiction by withdrawing its November NOFO on the day of the temporary restraining order hearing and issuing another, largely identical NOFO

1

hours after the court preliminarily enjoined HUD from doing so. The preliminary injunction order enjoined Defendants from reimplementing essentially the same unlawful NOFO and preserved the status quo, forestalling the worst of Plaintiffs' irreparable harms.

Now, despite the deadline to appeal the preliminary injunction having passed, and with a summary judgment ruling expected any day, Defendants try to leverage their appeal from the denial of their collateral motion and passage by Congress of an appropriations statute to stay the unappealed preliminary injunction and reinstate a NOFO the district court found is likely unlawful.

In passing the Transportation, Housing and Urban Development Consolidated Appropriations Act of 2026 (THUD Act), Congress adopted language to still the chaos sown by Defendants' haphazard administration of CoC. Nothing in the THUD Act altered any of the statutory provisions that the district court determined Defendants likely violated or allowed Defendants to issue an unlwaful NOFO. Allowing Defendants to issue the December 2025 NOFO would turn Congress' intent on its head, and unleash havoc in the Plaintiff States. This Court should deny Defendants' motion to stay.

## II. STATEMENT

### A. The Continuum of Care Program

Congress passed the McKinney-Vento Homeless Assistance Act to address the "unprecedented crisis" of homelessness. 42 U.S.C. § 11301(a)(1). HUD issues grants to local coalitions pursuant to a NOFO and subject to statutory "Required Criteria." 42 U.S.C. § 11386a.

The McKinney-Vento Act incorporates a Housing First approach, a "model of housing assistance that prioritizes rapid placement and stability in permanent housing in which admission does not have preconditions (such as sobriety or a minimum income threshold) and in which housing assistance is not conditioned upon participation in services." Suppl. App. 105. The core Housing First intervention is "permanent housing"—including "permanent supportive housing" and "rapid rehousing"—in which individuals receive stable housing "without a designated length of stay." 24 C.F.R § 578.37(a)(1). Under the McKinney-Vento Act, HUD funds "activities that have been proven to be effective at reducing homelessness" including "permanent supportive housing" and "rapid rehousing services." 42 U.S.C. § 11386b(d). The statute also prioritizes housing stability by directing HUD to renew existing projects "at the discretion of the applicant or project sponsor and subject to the availability of annual appropriations[.]" *Id*. § 11386c(b). Consistent with the McKinney-Vento Act, HUD has employed Housing First

policies for over two decades[1] and adopted "Housing First" as a core "Policy Priorit[y]."[2] HUD's strategic plan for Fiscal Years 2022-2026 provides that HUD will "implement a Housing First approach to reducing homelessness." Suppl. App. 21.

The McKinney-Vento Act requires that HUD issue a CoC NOFO "not later than 3 months after" Congress has enacted its yearly appropriations act. 42 U.S.C. § 11382(b). The deadline for HUD to issue a NOFO for Fiscal Year 2025 was June 15, 2025. *See* Pub. L. No. 119-4, 139 Stat. 9 (2025). As of that date, the two-year FY 2024-2025 NOFO was in place and would remain for many months, until the events giving rise to this lawsuit.

**B.     Defendants' Issuance of Unlawful FY 2025 CoC Funding Conditions**

On November 13, 2025—five months past the statutory deadline—HUD issued a new NOFO for FY 2025 CoC awards (the "November NOFO") and rescinded the prior FY 2024-2025 NOFO. Suppl. App. 218. The FY 2024-2025 NOFO informed applicants that "[p]rojects that are awarded FY 2024 funds may be eligible for award of FY 2025 funds using their FY 2024 application submission and are not required to apply for renewal for FY 2025 funds." Suppl. App. 92.

---

[1] HUD, *Office of Community Planning and Development Homeless Assistance Grants*, https://archives.hud.gov/budget/fy25/2025_CJ_Program_-_HAG.pdf.

[2] *See* Grants.gov, Related Documents, *2021 Continuum of Care* (2021), https://grants.gov/search-results-detail/335322.

HUD failed to explain why it was issuing a new FY 2025 NOFO long after the statutory deadline.

Moreover, the November NOFO contained unlawful conditions that reversed HUD's decades-old policies and drastically undermined the statutory goals of stability and continuity that had governed the program since its inception. These unlawful conditions (the "Challenged Conditions") included (1) a cap on renewal funding for permanent housing projects at thirty percent, despite that around eighty-seven percent of CoC funds expiring in 2026 are permanent housing projects; (2) new scoring criteria aimed at forcing applicants to require participants to enroll in services to receive housing; (3) a sharp decrease in the number of projects CoCs may designate as "Tier 1"[3] to thirty percent, despite that Tier 1 is generally set at around ninety percent; (4) requirements that CoCs demonstrate that their entire geographic area complies with policies favored by this Administration over which CoCs have no control, such as quickly clearing tents and encampments on public property and employing involuntary commitment standards, among other requirements. App. 4-6.

As detailed below, the November NOFO begat chaos. States and providers that had developed homeless response strategies in reliance on HUD's longstanding

---

[3] HUD permits CoCs to designate certain projects as Tier 1, meaning they are essentially guaranteed funding so long as they meet threshold criteria. *See* Suppl. App. 309.

policies were suddenly faced with the choice to either fundamentally shift their service delivery models in just two months or lose federal funding.

## C.   Proceedings in the District Court

Plaintiff States filed suit on November 25, 2025, challenging Defendants' unlawful rescission of the FY 2024-2025 NOFO and implementation of the Challenged Conditions. ECF Nos. 1, 48.[4] On December 8, less than an hour before a hearing on Plaintiffs' motion for a temporary restraining order, Defendants filed a Notice claiming that "HUD has withdrawn the [November NOFO] in order to assess the issues raised by Plaintiffs in their suits and to fashion a revised NOFO." ECF No. 41. Defendants contended this Notice "moot[ed]" Plaintiffs' then-pending request for preliminary injunctive relief, *id.*, but simultaneously stated that "[t]he Department still intends to exercise [its] discretion and make changes to the previously issued CoC NOFO to account for new priorities." ECF No. 41-2.

On December 19, 2025, the district court orally granted a preliminary injunction enjoining Defendants' rescission of the FY 2024-2025 NOFO and the Challenged Conditions of the November NOFO. App. 34-35; Suppl. App. 554-58. The court rejected Defendants' mootness argument, explaining that Defendants could not evade the court's jurisdiction by voluntarily withdrawing the November NOFO while expressly reserving the right to reissue another 2025 NOFO containing

---

[4] ECF cites are to the district court docket.

the same or similar conditions—an action that would constitute "a classic voluntary cessation scenario." Suppl. App. 555. The court then held that Plaintiffs had demonstrated a likelihood of success on the merits because the rescission and November 2025 NOFO "conflict[] with the statutory mandates of the McKinney Vento Act, including Congress's prioritization of permanent housing and renewal stability and the formula-based allocations scheme, as well as the statutory deadline for issuance of a NOFO." Suppl. App. 556. HUD's action was also likely arbitrary and capricious (and procedurally improper) under the APA, the court ruled. *Id.*

Hours later, Defendants issued a new NOFO (the "December NOFO") that contained nearly all the unlawful conditions from the November NOFO. ECF No. 66. The December NOFO came long after the statutory deadline had passed.

On December 23, 2025, the district court entered a written order memorializing its oral ruling. The order, *inter alia*, enjoined enforcement of the Challenged Conditions and required Defendants to "preserve the status quo ante that existed under the FY 2024-2025 NOFO, including by taking all steps necessary to process eligible renewals for FY 2025 CoC funding pursuant to the FY 2024-2025 NOFO." App. 1-2. In short, the district court addressed the December NOFO by concluding that it is likely unlawful for HUD to (1) rescind and reimplement a new NOFO after the statutory deadline, as the December NOFO purports to do, and

7

(2) issue a NOFO containing the Challenged Conditions, most of which are in the December NOFO.

Defendants' deadline to appeal the preliminary injunction order was February 23, 2026, and they did not appeal. Instead, the parties agreed to expeditiously move towards summary judgment. The parties' cross-motions for summary judgment are fully briefed.

**D.** **Congress Passes an Appropriations Bill Requiring Grant Renewals and Defendants Move to Dissolve the Preliminary Injunction**

On February 3, 2026, the President signed the THUD Act into law. *See* Pub. L. No. 119-75, 140 Stat. 173. Section 244 of that Act requires HUD, "prior to awarding any amounts through a notice of funding opportunity[,]" to noncompetitively renew for one year all CoC grants that expire in the first quarter of 2026. Section 244 also requires HUD to noncompetitively renew grants that expire in the second quarter of 2026 "if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to April 1, 2026[.]" And HUD must noncompetitively renew grants that expire in the remainder of 2026 "if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to July 1, 2026[.]" *Id.* The goal of Section 244 was to restore predictability and certainty where Defendants have sown chaos.

Following the THUD Act, Defendants sought to undermine that goal by moving to dissolve the preliminary injunction and reinstate the December NOFO.

The district court denied that motion, reasoning that "Plaintiffs continue to face imminent, irreparable harm from: (1) the upheaval and service gaps that would result from the Defendants' attempt to vastly overhaul the funding selection criteria on an accelerated basis; and (2) the Defendants' attempt to implement the December 2025 NOFO in light of the Court's prior determination that Plaintiffs have a strong likelihood of success in their action contesting its legality." App. 11-12.

Defendants appealed that denial. They also moved the district court for an emergency stay of the preliminary injunction order pending their appeal, even though the preliminary injunction order is *not* on appeal. On March 6, the district court denied the stay motion, explaining that a stay would substantially injure Plaintiffs by subjecting them to the "upheaval and service gaps caused by Defendants' attempt to implement the December 2025 NOFO on an expedited basis." App. 17.

Defendants now ask this Court for an emergency stay of the preliminary injunction order—which is not on appeal—pending their appeal from the denial of their motion to dissolve.

## III. LEGAL STANDARD

In evaluating a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

9

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Boston*, 996 F.3d 37, 44 (1st Cir. 2021) (citation modified) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (quotation omitted).

A party may not "use the appealability of an order denying modification [or dissolution] of an injunction to circumvent the time bar to appeal from the underlying injunction." *Franklin Twp. Sewerage Auth. v. Middlesex Cnty. Utilities Auth.*, 787 F.2d 117, 120 (3d Cir. 1986) (citation omitted). "[A]ppellate review of an order denying a motion to dissolve an injunction is confined to the propriety of the denial of the motion; it does not extend to the propriety of the entry of the underlying injunction." *Id.* A district court's decision to deny a motion to dissolve or modify an injunction is reviewed for abuse of discretion with factual findings subject to clear error review. *See Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 15 (1st Cir. 2008).

## IV. ARGUMENT

### A. Defendants Are Not Likely to Succeed on the Merits

#### 1. Defendants failed to timely appeal the preliminary injunction order

By seeking a stay of the preliminary injunction order, Defendants improperly seek "to circumvent the time bar to appeal from the underlying injunction." *Franklin Twp.*, 787 F.2d at 120 (quoting *Merrell-National Lab'ys, Inc. v. Zenith Lab'ys, Inc.*, 579 F.2d 786, 791 (1978)). Defendants' motion hinges on arguments that the preliminary injunction order was improper either because the written order "provided no substantive reasoning," or because the court supposedly did not "adjudicate[] the lawfulness of the December 2025 NOFO." Mot. at 14-15. Defendants waived these arguments. They are also wrong.

The district court's written order enjoined Defendants' rescission of the FY 2024-2025 NOFO, enjoined the Challenged Conditions, and enjoined Defendants from "giving effect to any…forthcoming agency action to further rescind or replace the FY24-25 NOFO[.]" App. 1-2. Defendants had until February 23, 2026, to appeal that ruling. Fed. R. App. P. 4(a)(1)(B); Fed. R. App. P. 26(a)(1). They chose not to appeal, even though the THUD Act was signed twenty days *before* that window closed. Defendants thus cannot now challenge the preliminary injunction prohibiting them from replacing the FY 2024-2025 NOFO with a new NOFO, particularly because that new NOFO contains nearly all of the Challenged Conditions.

*See Teledyne Techs., Inc. v. Shekar*, 831 F.3d 936, 940 (7th Cir. 2016) (where a party failed to appeal preliminary injunction order but then subsequently appealed motion to vacate, the Court could not entertain argument "that the preliminary injunction should not have been entered in the first place"); *Doe 2 v. Shanahan*, 755 F. App'x 19, 23 (D.C. Cir. 2019) (in reviewing a motion to dissolve an unappealed preliminary injunction, "[t]he merits of the preliminary injunction… are not properly before us"); *see also* 16 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3924.2 (3d ed. 2025) ("The most important limit on appeal from refusal of an explicit motion to… dissolve an injunction is that the motion cannot be used simply to revisit the initial injunction decision or resurrect an expired time for appeal."). Defendants cannot succeed on any argument that the preliminary injunction was wrongly decided because those arguments are time-barred.

Defendants' citation to the All Writs Act, 28 U.S.C. § 1651, does not cure the fundamental defect in Defendants' appeal, *i.e.*, that they are seeking to relitigate the underlying preliminary injunction despite having waived an appeal. *Contra* Mot. at 12 n.4. Defendants' "argument comes too late. On appeal from the denial of a motion to modify an injunction, 'review does not extend to the propriety of the original order.'" *Hoult v. Hoult*, 373 F.3d 47, 53 (1st Cir. 2004) (quotation omitted).

In any event, this Court's determination whether to grant a stay pending appeal pursuant to the All Writs Act is governed by the heightened standard

articulated in *Nken*, and Defendants "must meet a *heavy* burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that [HUD] will suffer irreparable injury if the judgment is not stayed pending [its] appeal." *Whalen v. Roe*, 423 U.S. 1313, 1316 (1975) (emphasis added). Defendants fail to meet their burden.

**2. Defendants are not likely to succeed on the merits of their appeal of the district court's denial of their motion to dissolve**

Defendants cannot clear the high bar of establishing likelihood of success on their appeal because they cannot show the district court abused its discretion in denying their motion to dissolve the preliminary injunction. *See Concilio de Salud Integral*, 551 F.3d at 15. The only change in circumstance between the district court's issuance of the preliminary injunction and Defendants' motion to dissolve is the THUD Act. Rather than aiding Defendants' likelihood of success, the Act further supports Plaintiffs' arguments.

Defendants argue that the Act authorizes issuance of the December 2025 NOFO. Mot. at 10-11. But it does no such thing. The Act requires HUD to issue noncompetitive renewals if HUD does not meet quarterly deadlines for making awards under a FY 2025 NOFO. It does not make any changes to procedural or substantive requirements of the McKinney-Vento Act, nor does it give Defendants carte blanche to issue an unlawful NOFO. For example, the THUD Act did nothing to alter HUD's obligation to release a NOFO "not later than 3 months after the

enactment of the act making the relevant appropriation." 42 U.S.C. § 11382(b). As Congress would have been aware, HUD had such a timely NOFO in place—the FY 2024-2025 NOFO. The December 2025 NOFO, by contrast, remains untimely.

Moreover, the THUD Act did not change the McKinney-Vento Act's substantive requirements, including its instuction that "permanent supportive housing" and "rapid rehousing" have "proven to be effective at reducing homelessness[.]" 42 U.S.C. § 11386b(d)(2). Nor did it excuse Defendants from complying with the APA's notice-and-comment procedures or requirement to engage in reasoned decision-making. But the December 2025 NOFO fails these statutory requirements and others.

Indeed, the Act affirmed, rather than refuted, Plaintiffs' positions with respect to the meaning and purpose of the McKinney-Vento Act. It directs HUD to noncompetitively renew all expiring grants unless and until awards are made under a lawful NOFO, thereby rejecting HUD's core contention that its policy preferences could override statutorily mandated renewals. *See* ECF No. 90 at 6-7.

Defendants' remaining arguments are barred becuase they attack the underlying preliminary injunction order, rather than the denial of their motion to dissolve. *See Hoult*, 373 F.3d at 53. In any event, Defendants are wrong. As Plaintiffs detailed in their pending summary judgment motion, HUD's untimely rescission of the FY 2024-2025 NOFO was both contrary to law and arbitrary and capricious. *See*

14

Suppl. App. 745-51; ECF No. 84 at 11-15. The Challenged Conditions in the December NOFO are likewise unlawful because they are contrary to law, arbitrary and capricious, non-compliant with the APA's notice-and-comment requirements, and violate constitutional separation of powers principles. *See* Suppl. App. 751-78; ECF No. 84 at 20-39.

Defendants err in contending that the district court did not provide substantive reasoning for its preliminary injunction order. *See* Mot. at 14-15. They rely solely on the written order, but that order incorporates the district court's reasoning explained in its oral ruling. *See* Suppl. App. 554-56. And the written order identifies the legal arguments and evidence it relied on in assessing each of the required elements to issue a preliminary injunction. *See* App. 1-3. Defendants offer no reason why this is insufficient, particularly "in the context of a preliminary injunction motion," in which "the district court's findings need not be overly detailed[.]" *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir. 1996).

Defendants also wrongly insist that "[n]o court has adjudicated the lawfulness of the December 2025 NOFO." Mot. at 14, 16. The district court determined that the rescission and replacement of the FY 2024-2025 NOFO was unlawful because the statutory deadline to issue a NOFO had passed and because Defendants' actions were contrary to law and arbitrary and capricious. Suppl. App. 554-56. And in its oral ruling, the district court made clear that Defendants could not evade its

jurisdiction by voluntarily withdrawing the November 2025 NOFO and then replacing it with a new NOFO containing the same Challenged Conditions. *Id*. But that is precisely what Defendants did in issuing the December 2025 NOFO. The district court was not required to reiterate its prior ruling after Defendants undertook the very action the court had warned against.

Moreover, Defendants' argument ignores that the district court already specifically found that the November 2025 NOFO "conflicts with the statutory mandates of the McKinney Vento Act, including Congress's prioritization of permanent housing and renewal stability and the formula-based allocations scheme," among many other defects. Suppl. App. 556. The December NOFO contains many of the same Challenged Conditions that the court already found were likely unlawful. The fact that these same conditions were repackaged into a new NOFO does not suddenly re-open the question of their legality or require the district court to repeat itself at length.

## B. Defendants Will Not Be Irreparably Injured Absent a Stay

Defendants also have not carried their burden to show they will be irreparably harmed without a stay. *See Nken*, 556 U.S. at 434. Defendants provide only a single purported irreparable harm that would occur absent a stay, i.e., their circular contention that "HUD cannot even begin implementing the December 2025 NOFO." Mot. at 14. For all of the reasons already found by the district court and explained in

Plaintiffs' motion for summary judgment, Plaintiffs have demonstrated that the December 2025 NOFO was unlawful. Defendants, of course, are "not irreparably harmed by an injunction issued to parties with Article III standing that bars enforcement of" unlawful agency action. *Doe v. Trump*, 157 F.4th 36, 79 (1st Cir. 2025).

Nor does the district court's denial of Defendants' motion to dissolve irreparably harm Defendants by "preventing HUD from meeting Congress's deadlines to award funds under a 2025 NOFO," as Defendants claim. Mot. at 7. As described above, Congress provided Defendants with two options under the THUD Act, both of which currently remain available to Defendants: (1) issue FY 2025 awards under a *lawful* FY 2025 NOFO (i.e., the FY 2024-2025 NOFO) by the deadlines provided by Congress; or (2) noncompetitively renew projects expiring in 2026 as detailed in the Act. Defendants' argument that the THUD Act somehow granted HUD discretion to proceed with *any* FY 2025 NOFO—regardless of the NOFO's content, when it is issued, or whether it is lawful—is not plausible.

## C. The Issuance of a Stay Would Irreparably Harm Plaintiff States

Defendants' motion should also be denied because Plaintiffs would suffer irreparable harm from a stay. These are the same harms that the district court considered when denying Defendants' motions to stay and dissolve the preliminary

injunction. *See* App. 11-12, 17-18. Defendants provide no new arguments or evidence to show the district court clearly erred in finding irreparable harm.

A stay would immediately allow HUD to effectuate the December 2025 NOFO and restart the chaos that the preliminary injunction rightly halted. Defendants claim that "any imminent harm" to Plaintiffs "has been eliminated" by the THUD Act because it addresses gaps in funding for grantees whose grants expire in the first two quarters of 2026. Mot. at 9. But even if those grantees are now safe, there will still be significant irreparable harm to grantees whose grants expire in the second half of 2026. As described below, Plaintiffs would be irreparably harmed by *any* implementation of the December NOFO.

First, the December NOFO precludes renewals of many CoC-funded projects by drastically slashing permanent housing, cutting Tier 1 funding by two thirds, and scoring applicants based on their jurisdiction's policies. *See* Suppl. App. 732-39. Many programs know they will lose a significant portion of their funding under the December NOFO and will immediately be forced to act accordingly. *See, e.g.*, Suppl. App. 447 ¶14 ("even for the CoCs that are the most agile and capable of such an overhaul… the best score that any Michigan CoC could achieve is 75/130—historically too low a score to be funded."); *see also* Suppl. App. 455 ¶16(c) ("Minnesota CoCs are unlikely to score competitively based on criteria under this NOFO.").

18

Therefore, many CoCs will immediately reduce services, fail to renew leases, decline new referrals of homeless individuals and families, and freeze hiring if they know funds are not coming in the second half of the year. *See* Suppl. App. 350 ¶14(c) (to "prepare for a loss" of funding "many organizations will have to stop providing services" and organizations "are considering having to not renew leases"); Suppl. App. 437 ¶56 ("Already as a result of the FY 2025 NOFO, some [Balance of State] CoC subrecipients are not accepting new referrals as they are concerned they will not be able to comply with leasing requirements"); 470 ¶23 ("The sudden change to competing in 2025 will prevent programs from hiring staff and placing households in permanent housing, serving as a chilling effect for operational programs in the coming months"). The district court's order denying Defendants' motion to dissolve explicitly acknowledged this problem of upheaval and service gaps. And each of these harms would occur *before* HUD makes awards under the December NOFO.

Even the applicants who are able to reshape existing programs pursuant to the December NOFO would need to immediately begin doing so, as it will take months to complete. *See, e.g.*, Suppl. App. 420 ¶15 ("compliance with dramatically different conditions will require a complete overhaul of our processes and those of our applicants," "more time, money, and effort," and many weeks to complete); *see also New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 330 (D.R.I. 2025) (finding

irreparable harm and citing months of preparation, extensive planning, and staffing hours).

The December NOFO will also immediately instill fear in and traumatize vulnerable populations at risk of eviction. *See* Suppl. App. 487 ¶25 (informing CoC program participants that "their housing is at-risk could cause additional trauma"); 410 ¶23 (explaining that a permanent supportive housing participant stated: "I feel…abandoned by the government. I don't even have a car that I can live in…there's no way I will survive or stay sober").

Most importantly, thousands of individuals and families will soon become homeless if HUD proceeds under the December 2025 NOFO, as recognized by the district court's February 27, 2026 Text Order. *See* App. 11-12; *see also New York*, 804 F. Supp. 3d at 330 (in the case of "homelessness," it "practically goes without saying that 'there can be no do over and no redress' if services are unlawfully denied and someone suffers for it…*That of course constitutes irreparable harm*") (emphasis added) (quotation omitted); *see also* ECF No. 11 (Pls.' Mot. Prelim. Inj.), at 48-49 (collecting examples). Here, the "human toll will be immediate and severe" and thousands of individuals will be "forcibly displaced, facing conditions that dramatically increase the risk of injury, illness, and preventable death." Suppl. App. 385 ¶36; *see also Martin Luther King, Jr. County v. Turner*, 798 F. Supp. 3d

1224, 1254 (W.D. Wash. 2025) (finding irreparable harm from loss of CoC funding due to "hundreds of shelter-unstable families losing access to housing").

Defendants themselves highlight the imminence of these consequences, stating that HUD must "open applications under the December 2025 NOFO by April 1" to issue third and fourth-quarter awards pursuant to that NOFO. Mot. at 6. In other words, Defendants want it both ways: on the one hand, they filed this so-called "EMERGENCY" motion to stay so they can immediately open the December 2025 NOFO—with all its unlawful terms intact—no later than April 1, 2026. *Id.* at 1. Yet at the same time, Defendants claim that Plaintiffs will not be imminently harmed by the implementation of the December 2025 NOFO, which would slash the vast majority of funding when it is about to expire. Both cannot be true. Plaintiffs would face significant harm as soon as the December NOFO is released, and this harm would rapidly compound in the following weeks.[5]

Defendants further ignore that other cases evaluating conditions on CoC funding have found that the "looming risk" of "budgetary uncertainty due to Defendants' unlawful actions is an injury in of itself" that qualifies as "irreparable harm." *See King County*, 798 F. Supp. 3d at 1253-54; *see also City of Seattle v. Trump*, No. 2:25-cv-01435-BJR, 2025 WL 3041905, at *10 (W.D. Wash. Oct. 31,

---

[5] Defendants' cited authority is inapplicable here, as that plaintiff was "more than three years away" from needing relief. *See Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004).

2025). This has been repeatedly supported by Plaintiffs' evidence. *E.g.*, Suppl. App. 397 ¶20 ("[t]he organizations that had expected to receive funding for the coming year now have their staffing plans and budgets thrown into doubt"). Notably, the harms discussed above are not exhaustive, and Plaintiffs' preliminary injunction motion also describes many other harms, such as the enormous costs to state public services. *See* ECF No. 11 at 43-49 (collecting examples).

Defendants claim that Plaintiffs' irreparable harm should be "independent" of their merits claims. Mot. at 12-13 (quoting *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004)). Plaintiffs' facts are easily distinguishable from *Charlesbank*, in which the movant argued only that conduct was unlawful as an attempt to show irreparable harm (and, in any event, future money damages was sufficient relief). *Charlesbank*, 370 F.3d at 162. Here, there is significant evidence of irreparable harm that is not purely monetary. Additionally, the above harms exist regardless of whether the December NOFO is itself lawful. For example, in anticipation of the December NOFO's funding cuts—whether lawful or not—many CoCs will immediately reduce services, fail to renew leases, decline new referrals, freeze hiring, and much more. Ultimately, the many imminent, real, and devastating harms to Plaintiffs are irreparable, and Defendants cannot show the district court clearly erred in so finding.

**D.** **The Public Interest Favors Denying Defendants' Motion to Stay**

As the district court already found, on multiple occasions, the public interest favors Plaintiffs. *See, e.g.*, Suppl. App. 557 ("Ensuring lawful agency action, continuity of housing, and stability for vulnerable populations is clearly in the public interest."). The issuance of a stay would severely harm the public interest, forcing thousands of individuals back into homelessness, placing individuals' safety and lives in jeopardy, and overwhelming state public services, among other harms. *See supra* at Section IV.C. "There has never been a threat as devastating and extreme to persons in poverty" as the Challenged Conditions and "lives will be lost." Suppl. App. 447 ¶15. Defendants' motion devotes only a few sentences to the public interest—all related to HUD's intent to implement its policy priorities—and fails to mention any of the severe consequences described above. Mot. at 15. But Defendants' policy priorities do not equitably outweigh the real human suffering that this litigation seeks to avert. *See Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 476-77 (D.R.I. 2025).

## V. CONCLUSION

The Court should deny Defendants' motion to stay.

RESPECTFULLY SUBMITTED on March 16, 2026.

**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ Andrew R.W. Hughes*
ANDREW R.W. HUGHES
ZANE MULLER
ALIANA KNOEPFLER
ANDREA ALEGRETT
Assistant Attorneys General
CRISTINA SEPE
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
Andrew.Hughes@atg.wa.gov
Zane.Muller@atg.wa.gov
Aliana.Knoepfler@atg.wa.gov
Andrea.Alegrett@atg.wa.gov
Cristina.Sepe@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**LETITIA JAMES**
Attorney General of New York

*/s/ Judith Vale*
BARBARA D. UNDERWOOD
Solicitor General
JUDITH N. VALE
Deputy Solicitor General
28 Liberty Street
New York, NY 10005
212-416-6274
Barbara.Underwood@ag.ny.gov
Judith.Vale@ag.ny.gov

*Attorneys for Plaintiff State of New York*

**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Jordan G. Mickman*
KATHRYN M. SABATINI
Chief, Civil Division
Special Assistant Attorney General
JORDAN G. MICKMAN
Unit Chief, Civil and Community Rights
Assistant Attorney General
LEONARD GIARRANO IV
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400, Ext. 2079
Ksabatini@riag.ri.gov
Jmickman@riag.ri.gov
Lgiarrano@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**KRISTIN K. MAYES**
Attorney General of Arizona

*/s/ Hayleigh S. Crawford*
HAYLEIGH S. CRAWFORD*
Deputy Solicitor General
WILLIAM Y. DURBIN
Senior Litigation Counsel
Office of the Attorney General
2005 North Central Ave.
Phoenix, AZ 85004
602-542-3333
Hayleigh.Crawford@azag.gov
William.Durbin@azag.gov
ACL@azag.gov

*Attorneys for Plaintiff State of Arizona*

**ROB BONTA**
Attorney General of California

/s/ Jarrell Mitchell
JARRELL MITCHELL
Deputy Attorney General
MICHAEL L. NEWMAN
Senior Assistant Attorney General
JOEL MARRERO
Supervising Deputy Attorney General
BRIAN BILFORD
LAUREN GREENAWALT
Deputy Attorneys General
Jarrell.Mitchell@doj.ca.gov
Brian.Bilford@doj.ca.gov
Lauren.Greenawalt@doj.ca.gov
Joel.Marrero@doj.ca.gov
Michael.Newman@doj.ca.gov

*Attorneys for Plaintiff State of California*

**WILLIAM TONG**
Attorney General of Connecticut

/s/ Andrew M. Ammirati
ANDREW M. AMMIRATI
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**PHILIP J. WEISER**
Attorney General of Colorado

/s/ David Moskowitz
DAVID MOSKOWITZ
Deputy Solicitor General
NORA PASSAMANECK
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
720-508-6000
David.Moskowitz@coag.gov

*Attorneys for Plaintiff State of Colorado*

**BRIAN L. SCHWALB**
Attorney General of District of Columbia

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
Solicitor General
DIA RASINARIU
Assistant Attorney General
Office of the Attorney General
of the District of Columbia
400 Sixth Street NW
Washington, D.C. 20001
202-724-6609
Caroline.VanZile@dc.gov

*Attorneys for Plaintiff District of Columbia*

25

**KATHLEEN JENNINGS**
Attorney General of Delaware

/s/ Ian R. Liston
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
ROSE GIBSON
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov

*Attorneys for Plaintiff State of Delaware*


**ANDY BESHEAR**
Governor of Kentucky

/s/ S. Travis Mayo
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
501 High Street
Frankfort, KY 40601
502-564-2611
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
Laurac.Tipton@ky.gov

*Attorneys for Plaintiff Office of the Governor ex rel. Andy Beshear, in His Official Capacity as Governor of the Commonwealth of Kentucky*

**KWAME RAOUL**
Attorney General of Illinois

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
312-814-5526
Alex.Hemmer@ilag.gov

*Attorneys for Plaintiff State of Illinois*


**AARON M. FREY**
Attorney General of Maine

/s/ Katherine W. Thompson
KATHERINE W. THOMPSON
Special Counsel
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel: 207-626-8455
Fax: 207-287-3145
Kate.Thompson@maine.gov

*Attorneys for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

/s/ James C. Luh
JAMES C. LUH
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6411
Jluh@oag.maryland.gov

*Attorneys for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

/s/ Michelle Pascucci
KATHERINE DIRKS
Chief State Trial Counsel
MICHELLE PASCUCCI
NITA KLUNDER
State Trial Counsel
ESME CARAMELLO
Director, Housing Affordability
Unit
AARON DULLES
LAUREN YAMAGUCHI
Assistant Attorneys General
Office of the Massachusetts
Attorney General
1 Ashburton Place
Boston, MA 02108
617-963-2255
Michelle.Pascucci@mass.gov

*Attorneys for Plaintiff*
*Commonwealth*
*of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

/s/ Neil Giovanatti
NEIL GIOVANATTI
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

*Attorneys for Plaintiff State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

/s/ Brian S. Carter
BRIAN S. CARTER
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
651-300-7403
Brian.carter@ag.state.mn.us

*Attorneys for Plaintiff State of*
*Minnesota*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

*/s/ Daniel Resler*
DANIEL RESLER
Deputy Attorney General
33 Washington St., 9th Floor
Newark, NJ 07102
973-648-4726
Daniel.Resler@law.njoag.gov

*Attorney for Plaintiff State of New Jersey*


**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Scott P. Kennedy*
SCOTT P. KENNEDY
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: 971-673-1880
Fax: 971-673-5000
Scott.Kennedy@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

**RAÚL TORREZ**
Attorney General of New Mexico

*/s/ Anjana Samant*
ANJANA SAMANT
Deputy Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
505-270-4332
Asamant@nmdoj.gov

*Attorneys for Plaintiff State of
New Mexico*


**JENNIFER C. SELBER**
General Counsel

*/s/ Jacob B. Boyer*
JACOB B. BOYER
STEPHEN R. KOVATIS
Deputy General Counsel
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
JacobBoyer@pa.gov
717-460-6786

*Attorneys for Plaintiff Governor
Josh Shapiro, in His Official
Capacity as Governor of the
Commonwealth of Pennsylvania*

**CHARITY R. CLARK**
Attorney General of Vermont

/s/ Samuel B. Stratton
SAMUEL B. STRATTON
Assistant Attorney General
109 State Street
Montpelier, VT 05609
802-828-3171
sam.stratton@vermont.gov

*Attorneys for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

/s/ Faye B. Hipsman
FAYE B. HIPSMAN
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
608-264-9487
Faye.Hipsman@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the response contains 5,199 words. The document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Andrew R.W. Hughes*
Andrew R.W. Hughes