# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

STATE OF WASHINGTON, *et al.*,
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,
Defendants-Appellants.

NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,
Defendants-Appellants.

On Appeal from the United States District Court
for the District of Rhode Island

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney General*

DANIEL TENNY
SARAH CLARK GRIFFIN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8727*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS

TABLE OF AUTHORITIES

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................3

I.      The government is likely to prevail on its appeal. .....................................3

II.     The equitable factors favor a stay pending appeal.....................................8

CONCLUSION ..................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**                                                                    <u>**Page(s)**</u>

*In re Am. Fed'n of Gov't Emps., AFL-CIO,*
   837 F.2d 503 (D.C. Cir. 1988) ........................................................................ 9

*United States v. James Daniel Good Real Property,*
   510 U.S. 43 (1993)...........................................................................................5

**Statutes:**

Transportation, Housing and Urban Development, and Related Agencies
   Appropriations Act, 2026 (2026 Appropriations Act),
   Pub. L. No. 119-75, div. D, tit. II, 140 Stat. 173, H.R. 7148 ......................................1, 3

# INTRODUCTION

Plaintiffs' oppositions, like the district court's refusal to dissolve its preliminary injunction, refuse to come to grips with the 2026 Appropriations Act. That Act was a game changer. In December, the district court held that HUD could not issue a 2025 NOFO and was instead bound by the two-year 2024 NOFO that reflected the previous Administration's priorities. Congress then reached a bipartisan compromise: it directed HUD to renew the grants expiring in the first quarter of calendar year 2026, but gave HUD permission to issue grants under a new NOFO for the remaining quarters so long as it did so expeditiously.

All that stands in the way is the district court's preliminary injunction. Congress expressly contemplated that HUD could make awards "under a fiscal year 2025 notice of funding opportunity." H.R. 7148 at 250. Yet the injunction prohibits HUD "from giving effect to any existing or forthcoming agency action to further rescind or replace the FY24-25 NOFO." App. 2, 41. If the December 2025 NOFO is not in effect by April 1, HUD will not have enough time to accept applications and issue awards under that NOFO by July 1. Under the Appropriations Act, that means all awards expiring this year will be renewed, stripping HUD of the discretion that Congress intended it to exercise, while rewarding plaintiffs with full relief to which they have never shown an entitlement. That is grossly inequitable.

The only appropriate course here is to stay the preliminary injunction and allow HUD to begin to process applications under its December 2025 NOFO. Plaintiffs can

continue to contest its legality—which has never been adjudicated on the merits—and, so long as that dispute is resolved by July 1, they face no harm. If they prevail and the new NOFO is set aside, their projects will be automatically renewed under the terms of the 2026 Appropriations Act. If they do not prevail, they have nothing to complain about. Absent relief, however, HUD will not even have opportunity to defend its 2025 NOFO, and the will of both Congress and the Executive will be thwarted.

None of plaintiffs' responses is compelling. On the merits, their suggestion that Congress's repeated reference to a "fiscal year 2025 notice of funding opportunity" may have meant to refer to a pre-existing notice issued in fiscal year 2024 to cover both fiscal year 2024 and fiscal 2025 funds does not withstand even cursory scrutiny. They also claim the December 2025 NOFO included unlawful conditions, but the district court never passed on those arguments in the context of that NOFO—indeed, the court issued the injunction before HUD released the December NOFO, which was materially different from the version initially challenged by plaintiffs. Again, all HUD wants is a chance to defend its NOFO on the merits, before the passage of time makes the entire matter moot.

On the equities, plaintiffs cannot explain how allowing the government to begin accepting and considering applications under a new 2025 NOFO imposes irreparable harm, given that prevailing on their fully briefed summary-judgment motion will result in automatic renewal of their existing grants. And plaintiffs' argument that HUD suffers no harm from being locked into the prior Administration's policy choices is unserious.

The government respectfully requests a stay no later than March 30, so that it has sufficient time to accept applications and make new grants by July 1, 2026.

## ARGUMENT

### I. The government is likely to prevail on its appeal.

The district court erred in refusing to dissolve its preliminary injunction. As a result, HUD is likely to prevail on its appeal.

**A.** The preliminary injunction cannot survive the 2026 Appropriations Act. The injunction is premised on the conclusion that HUD must continue to use its two-year 2024 NOFO instead of issuing a 2025 NOFO (that is, a NOFO to distribute the funds appropriated in fiscal year 2025). As a result, the injunction forbids HUD from giving effect to any 2025 NOFO. App. 2, 41. But the 2026 Appropriations Act contemplates that HUD can award funds under a 2025 NOFO. Specifically, it provides that HUD need only renew grants expiring later this year if it has not already awarded funds under "a fiscal year 2025 notice of funding opportunity." H.R. 7148 at 250. Congress has thus confirmed that HUD may issue "a fiscal year 2025 notice of funding opportunity"— that is, a new 2025 NOFO.

Despite this language, the district court did not even acknowledge the 2026 Appropriations Act in denying HUD's motion to dissolve, much less explain why it posed no barrier to maintaining a preliminary injunction against any 2025 NOFO. And plaintiffs are wrong to assert that the district court's decision can nevertheless be squared with the 2026 Appropriations Act. Plaintiffs posit that "a fiscal year 2025 notice

of funding opportunity" refers to the two-year 2024 NOFO that HUD sought to rescind last year. *See* State Opp. 13-14; NAEH Opp. 13-14. That makes no sense. Even apart from the oddity of referring to an existing NOFO issued for fiscal years 2024 and 2025 as "a fiscal year 2025 notice of funding opportunity," there would have been no reason for Congress to authorize HUD to issue new grants, with the threat of renewing old grants if HUD failed to act quickly enough, if Congress really intended for HUD to be required to continue the same awards and policies that it was trying to deviate from in a new NOFO. According to plaintiffs, HUD's two options are to issue 2025 awards under the 2024 NOFO or else non-competitively renew awards granted under the 2024 NOFO. State Opp. 17. Plaintiffs do not explain why Congress would have established a regime that puts HUD to such an insignificant choice.

Plaintiffs are on no firmer ground in suggesting that the underlying statute requires the Court to read the 2026 Appropriations Act to mean something other than what it says. The statute on which they rely states: "The Secretary shall release a notification of funding availability for grants awarded under this part for a fiscal year not later than 3 months after the date of the enactment of the appropriate Act making appropriations for the Department of Housing and Urban Development for such fiscal year." 42 U.S.C. § 11382(b). That provision cannot plausibly be read to preclude a NOFO after that date, especially in light of Congress's clear indication that such a NOFO is permitted. The Supreme Court has "long recognized that many statutory requisitions intended for the guide of officers in the conduct of business devolved upon

4

them . . . do not limit their power or render its exercise in disregard of the requisitions ineffectual," and in particular "that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 63 (1993) (quotation marks omitted). In all events, Congress's recent enactment, which expressly contemplates a fiscal year 2025 NOFO, confirms that Congress did not understand HUD to be prohibited from issuing one.

**B.** This fundamental error arose when the district court denied the motion to dissolve, not when it issued the original injunction. Thus, there is no merit to plaintiffs' complaint that HUD "cannot now challenge the preliminary injunction." State Opp. 11; *see* NAEH Opp. 2, 15. The government has identified a legal error that underlay the district court's refusal to dissolve the injunction, and it has timely appealed to obtain reversal of the denial of the dissolution order on that basis. Moving to dissolve was not an effort to restart the preliminary-injunction appeal deadline—it was a response to the 2026 Appropriations Act, which fundamentally changed the litigation by eviscerating plaintiffs' main merits theory, addressing any potential harms, and putting HUD on the clock to issue awards under a 2025 NOFO.

Nor could HUD have appealed any sooner. HUD was obligated to give the district court an opportunity to adapt to this critical development, and thus asked the court to dissolve the preliminary injunction (or rule on the pending summary judgment motions) by March 2, so that HUD could have a meaningful opportunity to implement

the December 2025 NOFO. The district court did neither, leaving HUD with no choice but to seek appellate relief or watch its rights disappear merely by passage of time.

**C.** Plaintiffs also suggest that the preliminary injunction could be sustained, notwithstanding the 2026 Appropriations Act, because the December 2025 NOFO included substantively unlawful conditions and terms. *See* State Opp. 7-8, 11, 15-16; NAEH Opp. 9. But the district court never addressed the lawfulness of that NOFO— not in issuing the original injunction, nor in denying the motion to dissolve.

The district court's oral preliminary-injunction order, which preceded the issuance of the December 2025 NOFO, addressed the lawfulness of the rescission of the two-year NOFO and the issuance of the November 2025 NOFO—and that in just two sentences, at the highest level of generality. *See* Suppl. App. 556 (Tr. 69:1-15). The written preliminary-injunction order provided no substantive reasoning for its conclusion that HUD should not be permitted to give effect to any 2025 NOFO, stating only that the court "conclude[d] that Plaintiffs have established a strong likelihood of success on the merits" based on the briefing and December 19 hearing—which, again, preceded the issuance of the December 2025 NOFO. *See* App. 1-3, 40-42. The district court's text order denying HUD's motion to dissolve did no more—it merely cross-referenced its prior ruling as if that earlier ruling had addressed the December 2025 NOFO, which it had not. *See* App. 11, 50 (concluding that plaintiffs faced irreparable harm from "the Defendants' attempt to implement the December 2025 NOFO in light

of the Court's prior determination that Plaintiffs have a strong likelihood of success in their action contesting its legality").

Plaintiffs' response is that the district court has adjudicated the lawfulness of the November 2025 NOFO, which plaintiffs view as sufficiently similar to the December 2025 NOFO. State Opp. 15-16; NAEH Opp. 14-15. But the December 2025 NOFO, made available for review since December 19, 2025, is materially different: it removed some of the challenged requirements of the November 2025 NOFO, amended others, and added a severability provision. The district court has never addressed any of those points. The district court's cursory analysis of the November 2025 NOFO months ago cannot support its decision to maintain an injunction against any and all 2025 NOFOs, particularly in light of the 2026 Appropriations Act.

In any event, plaintiffs' arguments about purported defects in the December 2025 NOFO can be resolved by the district court in the first instance in its summary-judgment decision. Again, all HUD wants is the ability to make its merits defense, and have that defense adjudicated, before the passage of time and the 2026 Appropriations Act deadlines wipe out the discretion that Congress afforded it. It is sufficient here to conclude that a federal court cannot enjoin an agency action before it even considers the legality of that action, and the only other basis for enjoining the December 2025 NOFO—that HUD should not have put out any new NOFO at all—is inconsistent with subsequently enacted legislation.

## II. The equitable factors favor a stay pending appeal.

The equitable factors have tipped heavily toward HUD.

**A.** Plaintiffs assert that a stay would create "chaos," State Opp. 18; NAEH Opp. 16, and irreparably harm grantees whose awards are expiring after July 1, but that is grossly overstated. The immediate effect of a stay would merely be to allow HUD to invite applications under the new NOFO and begin to consider them. But plaintiffs would not be harmed unless grant funds were finally awarded under the December 2025 NOFO. Given current timing, that will not happen until close to July 1. In the meantime, plaintiffs' challenges to the December 2025 NOFO are already fully briefed at summary judgment. Indeed, plaintiffs assert that they expect a summary-judgment ruling "any day." State Opp. 2. If that ruling goes in their favor and is not stayed, there will be no harm to plaintiffs. And if they lose, they have no basis to object.

Plaintiffs also suggest that those whose grants expire in the second half of 2026 will be unduly burdened merely by applying for funds under the December 2025 NOFO, because they will soon also have to apply for funds under HUD's forthcoming 2026 NOFO. *See* NAEH Opp. 17. But the forthcoming NOFO undermines plaintiffs' claim of injury rather than supporting it. Plaintiffs assert that they are injured by having to "revamp" or "reshape" their programs to satisfy HUD's policy approach for addressing homelessness. *See* NAEH Opp. 17; State Opp. 19. But it is reasonable to expect that the 2026 NOFO will require that of plaintiffs as well. In other words, to the

extent plaintiffs are harmed by having to adapt to HUD's new policy approach, maintaining the preliminary injunction does not help them avoid that harm.

In all events, Congress has already struck a balance between HUD's discretion to issue CoC awards pursuant to a new NOFO and the risk of funding gaps for programs with grant awards that expire in the second half of 2026. As a result of the Act's staggered deadlines, the grants expiring in the first two quarters of 2026 will be renewed no matter what happens in this litigation. To the extent that plaintiffs continue to maintain that the preliminary injunction must remain in effect now to guard against the risk of funding gaps starting on July 1, 2026, their concern is with the staggered scheme in the 2026 Appropriations Act. But where Congress has spoken, this Court is "not free to ignore that judgment and rewrite the statute to include a [different] timetable." *In re Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 506 (D.C. Cir. 1988).

**B.** As for the harm to HUD, plaintiffs do not dispute that, if the preliminary injunction remains in place for two more weeks, it will effectively provide plaintiffs with the permanent relief they seek in the litigation and prevent HUD from exercising its policy judgment as to how to use the 2025 CoC funds.

Plaintiffs' argument that HUD cannot suffer harm from the injunction because the December 2025 NOFO is unlawful (State Opp. 16-17, NAEH Opp. 18) both assumes the (never-adjudicated) merits and ignores the broader sweep of the district court's injunction to preclude any 2025 NOFO—even though Congress has expressly countenanced the implementation of such a NOFO. Continuing to stymie HUD's

9

exercise of its congressionally endorsed authority represents an especially severe continuing injury to the agency and the public interest.

NAEH argues that a stay is also unwarranted here because it believes that HUD is already past the time where it could realistically meet Congress's July 1 deadline. NAEH Opp. 19. But HUD's declarant states otherwise and has explained the steps HUD would take to implement the 2025 NOFO in time. App. 9, 48. The timing is, indeed, tight—HUD "anticipates that it will need the full amount of time from April 1, 2026, to finish all of this work and make awards by July 1, 2026." App. 9, 48. But HUD is in a better position than plaintiffs to assess whether it is workable. And of course, if plaintiffs are correct that HUD will not be able to meet the July 1 deadline, then none of the harms associated with losing grant funding will come to pass, so there is no harm to dissolving the injunction and allowing HUD to at least try.

As for the public interest, HUD seeks to implement the policy approach that it deems best suited to addressing an ongoing homelessness crisis and therefore also to avert human suffering. Restoring HUD's flexibility to implement its policy priorities to address this crisis is thus in the public interest. And all the more so when HUD simply wants an opportunity to explain how its approach is consistent with the law before losing the chance to implement it. Put simply, it cannot possibly advance the public interest for federal courts to enjoin agency actions in advance, without considering their substantive validity, and without being willing to reconsider based on intervening legislative judgments.

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DANIEL TENNY

*s/ Sarah Clark Griffin*
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*
*sarah.c.griffin@usdoj.gov*

MARCH 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,729 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

_s/ Sarah Clark Griffin_
Sarah Clark Griffin

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

<span style="margin-left:50%">*s/ Sarah Clark Griffin*</span>
<span style="margin-left:50%">Sarah Clark Griffin</span>